# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# EASTERN DIVISION

| | |
|---|---|
| CORNICE & ROSE INTERNATIONAL, LLC;<br><br>  Plaintiff,<br><br>vs.<br><br>JON RICHARD HERBRECHTSMEYER; GENE A. HALL; KURT HERBRECHTSMEYER; MARK MILLER; DIANE WOLFE; MICHAEL DOE; and FIRST SECURITY BANK & TRUST CO.;<br><br>  Defendants. | Case No. 20-CV-2016-KEM<br><br>**MEMORANDUM OPINION AND ORDER** |

Currently pending before the court is Defendants' motion for summary judgment. Docs. 20, 23, 30. Plaintiff resists. Doc. 26. The parties consented to the exercise of jurisdiction by a United States magistrate judge, and the case was referred to me for final disposition. Doc. 12. Although Defendants requested oral argument, I have determined it unnecessary. *See* LR 7(c). I **grant** Defendants' motion for summary judgment (Doc. 20).

## I.   BACKGROUND[1]

In 2012, nonparty Charles Thomson created a limited liability company (which I will call MPC LLC, also a nonparty) to develop a mixed-use residential and commercial building in Charles City, Iowa, to be called McQuillen Place. Pl. SOF; Def. Resp. SOF.

---

[1] "Def. SOF" refers to Defendants' Statement of Facts filed at Doc. 20-1, "Pl. Resp. SOF" refers to Plaintiff's Response to Defendants' Statement of Facts filed at Doc. 26-5; "Pl. SOF" refers to Plaintiff's Statement of Facts filed at Doc. 26-4; and "Def. Resp. SOF" refers to Defendants' Response to Plaintiff's Statement of Facts filed at Doc. 29.

Thomson sought to fund the project through tax credits from the state and bank loans. *Id.* In October 2013, MPC LLC received an award letter from the Iowa Economic Development Authority granting the construction project tax credits valued at $500,000. *Id.* A little over a year later, in December 2014, MPC LLC entered into a loan agreement with two banks for the rest of the funding: nonparty Cedar Rapids Bank & Trust (Cedar Rapids Bank) and Defendant First Security Bank & Trust Co. (First Bank). *Id.* Thomson and his family had primarily banked with First Bank in the past, but First Bank wanted Cedar Rapids Bank involved due to Cedar Rapid Bank's familiarity with the Iowa Economic Development Authority. *Id.* Under the terms of the loan agreement, Cedar Rapids Bank was the lead bank, but it only carried 10% of the loan, while First Bank carried 90% of the loan. *Id.* Thomson's father provided a $900,000 guaranty for the loan. *Id.*

Construction on McQuillen Place began in March 2015. *Id.* Construction proceeded more slowly than expected, with delays due to subcontractors failing to meet deadlines, a vendor refusing to work with the utilities company, and a shortage of skilled tradesmen in the area. *Id.* The construction loan came due on June 30, 2016, when construction was not yet completed. *Id.* In discussing a loan extension, First Bank expressed concern about the delays and wanted to finish the project on a faster timeline, but Cedar Rapids Bank agreed with MPC LLC that a faster timeline would increase costs, as it would necessitate overtime pay and paying tradesman a premium to lure them away from other projects. *Id.* The loan was ultimately extended through June 30, 2017. *Id.*

By July 2017, construction was still not completed, and the parties learned that the Iowa Economic Development Authority would not be giving MPC LLC the tax credits as expected. *Id.* Cedar Rapids Bank had failed to inform the parties of certain deadlines required to obtain the tax credits. *Id.* Upon learning that one such deadline had passed, Cedar Rapids Bank had assured Thomson and First Bank that the credits were still available and that an extension could be obtained, but Cedar Rapids Bank did nothing to secure the tax credits or the extension. *Id.*

In September 2017, First Bank renewed the construction loan through December 2017. *Id*. Construction was still not finished in December 2017. *Id*. The bank loan was not extended again, and construction stopped due to lack of funding. *Id*.

Cornice & Rose International, LLC, (Cornice LLC) initiated this lawsuit in March 2020 against First Bank and certain First Bank officers and directors. Def. SOF; Pl. Resp SOF; Doc. 1. Cornice LLC alleged that it provided architectural and construction services to MPC LLC for the development of McQuillen Place and that "Plaintiff's principal equity security holder obtained a 40% equity stake in [MPC LLC] as part of its compensation for services." Doc. 1. Cornice LLC brought two claims against First Bank and its officers as a result of the stopped construction on McQuillen Place: intentional interference with contract and malicious interference with business advantage. *Id*.

Defendants move for summary judgment on both claims. Docs. 20, 23, 30. Cornice LLC resists. Doc. 26. Cornice LLC's resistance seems to characterize one of its claims as breach of the duty of good faith and fair dealing, but this claim is not alleged in the complaint. *See* Doc. 1. In addition, although the complaint alleges that First Bank owed *MPC LLC* a duty of good faith and fair dealing, it does not allege that First Bank owed *Plaintiff* a duty of good faith and fair dealing. "The Court will not consider claims that have not been pleaded in the Complaint [first raised in resistance to] a motion for summary judgment." **Harris v. Colvin**, No. 11-0795-CV-W-SOW-SSA, 2013 WL 12074969, at *10 (W.D. Mo. Nov. 26, 2013), *aff'd,* 577 F. App'x 634 (8th Cir. 2014) (per curiam).

## II. DISCUSSION

Under Federal Rule of Civil Procedure 56(a), "[t]he court shall grant [a motion for] summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." For the plaintiff to avoid summary judgment, sufficient evidence must exist "on which the jury could

3

reasonably find for the plaintiff." ***Olmsted v. Saint Paul Pub. Sch.***, 830 F.3d 824, 828 (8th Cir. 2016) (quoting ***Anderson v. Liberty Lobby, Inc.***, 477 U.S. 242, 252 (1986)). The court "view[s] the record in the light most favorable to the nonmoving party and draw[s] all reasonable inferences in that party's favor." ***Soo Line R.R. Co. v. WernerEnters.***, 825 F.3d 413, 418 (8th Cir. 2016) (quoting ***Bishop v. Glazier***, 723 F.3d 957, 960-61 (8th Cir. 2013)).

### A. Intentional Interference with Contract

Under Iowa law, a claim for intentional interference with contract requires proof of the following:

> (1) plaintiff had a contract with a third-party; (2) defendant knew of the contract; (3) defendant intentionally and improperly interfered with the contract; (4) the interference caused the third-party not to perform, or made performance more burdensome or expensive; and (5) damage to the plaintiff resulted.

***Gibson v. ITT Hartford Ins. Co.,*** 621 N.W.2d 388, 399 (Iowa 2001) (quoting ***Jones v. Lake Park Care Ctr., Inc.,*** 569 N.W.2d 369, 377 (Iowa 1997)). Defendants move for summary judgment on this claim, arguing that Plaintiff has provided no evidence of a contract between MPC LLC (the third party) and Cornice LLC (the Plaintiff) and that even if such a contract existed, there is no evidence that MPC LLC terminated the contract with Plaintiff as a result of Defendants' actions.

Cornice LLC argues that it "has established the basis for an existing contractual relationship with [MPC LLC]" "through the invoices attached to Plaintiff's petition." Doc. 26-3. The evidence Cornice LLC refers to is a two-page invoice summary from Cornice LLC directed to MPC LLC listing charges and payments from 2013 through 2019, with a balance due of $2,516,851.30. Doc. 1 at 46-47. The invoice summary does not contain any evidence of the terms and conditions of the contract or any indication of the consideration Cornice LLC provided in exchange for its request for more than $2 million. Cornice LLC has not provided sufficient evidence of a contract between itself

4

and the third party, MPC LLC. Because poof of a contract with a third party is a necessary element of intentional interference with contract under Iowa law, Defendants are entitled to summary judgment on Cornice LLC's claims of intentional interference with contract.

### B. *Malicious Interference with Business Advantage*

Under Iowa law, tortious interference with prospective business advantage requires proof of "a purpose to injure or destroy" (unlike claims for interference with an existing contract). ***Farmers Co-op. Elevator, Inc. v. State Bank***, 236 N.W.2d 674, 679 (Iowa 1975). Defendants argue that Cornice LLC cannot prove that First Bank acted with a purpose to injure or destroy Cornice LLC, rather than simply looking out for the bank's best interests. Cornice LLC responds that minutes from First Bank's board meetings, as well as affidavits from Thomson and James Gray, the principal partner of Cornice LLC, show that First Bank attempted to have Cornice LLC removed from the project after it ran into delays.

Board meeting minutes from September 2017, when First Bank last extended the construction loan, reflect that First Bank was concerned about construction on McQuillen Place ever being finished under Thomson's leadership and wanted a different construction company to complete the project. *See* Pl. SOF ¶¶ 44-45, 48; Doc. 1 at 26-29. A board member expressed that Thomson had "no skin in the game" because if he "walk[ed] away tomorrow and declare[d] bankruptcy," he would lose nothing, whereas First Bank needed "to get the project done" to escape. *Id*. The board recognized they currently lacked authority to bring in a new construction company to complete the project, but one member proposed conditioning the loan extension on construction following a weekly schedule, and if the project fell behind, the bank would then have authority to hire a new contractor. *Id*.

Construction on McQuillen Place was still not finished in December 2018. Thomson's father agreed to provide $500,000 for McQuillen Place's completion, but only if his $900,000 guaranty on the bank loan was reduced for every dollar he spent on

5

construction. Doc. 26-1. Board meeting minutes from March 2018 reflect that the board debated this option, recognizing that First Bank's security interest in McQuillen Place would increase in value upon the building's completion. Doc. 1 at 30-36. But the board felt First Bank would not be in any better position under MPC LLC's proposed solution than if the bank foreclosed on the property and found a different person to complete construction. *Id.* The board noted they wanted more consideration because they did not have faith that Thomson could complete the building and operate it profitably. *Id.* Thus, the board discussed instituting foreclosure procedures as a "bluff." *Id.* The board hoped that Thomson's father would agree to provide more money as a result (such as agreeing to fund completion without reducing his guaranty). *Id.* The minutes reflect that the board discussed that if Thomson's father did not call the bluff, they would need to be willing to take on completion of the project. *Id.* When a board member wondered if undertaking construction would negatively affect First Bank's reputation, another responded that when First Bank "show[ed] up, finish[ed], lease[d], [and] add[ed] windows and sidewalks," it would be a "hero." *Id.* One board member noted that if Thompson was involved, so was his Chicago partner (Gray of Cornice LLC), who was "condescending to the [City] and to" the bank, "[h]is enforcement has failed at the last 4 he has been involved in," and he did not "care[] whether or not [construction] gets completed." *Id.* Thus, the board member noted Thomson's father "needs to know [Thomson's] partner is a detriment." *Id.* The minutes also reflect one board member noted:

> [E]ven if we let [Thomson and his father] finish it, I don't think apartments are going to cash flow, so we will have a non performing asset, which will impact our books for eons, as this will not support any long term financing. We can work through this, but I struggle with giving [Thomson] the satisfaction of completing this as he has bungled it up and he is trying to get rid of the $500k.

*Id.*

Although the board meeting minutes reflect that First Bank was dissatisfied with Cornice LLC and MPC LLC's management and wanted them removed from the project,

this is insufficient to demonstrate that First Bank acted with the purpose to injure or destroy Cornice LLC. A bank defendant does not act with the purpose to injure or destroy when it "acted for it[s] 'own purposes'" and "was alarmed about its security and sought to protect its position." *Farmers Co-Op*, 236 N.W.2d at 682. The board meeting minutes overwhelmingly reflect that the board wanted construction to be completed to ensure First Bank could recoup its loan, which the board doubted would be accomplished with Cornice LLC and MPC LLC running the show.

Cornice LLC relies heavily on the statements that Gray was "condescending" and a "detriment," that a board member did not want to give Thomson the satisfaction of completing the project, and that First Bank would be a hero if it completed construction. But these statements, when considered in context (as set forth above), further show that First Bank was looking out for its own interests in completing construction so that its security interest had a higher value, and it did not lose money on the loan. They do not demonstrate First Bank acted with the purpose to destroy Cornice LLC. *Cf. id.* (noting that the bank defendant would have acted with the purpose to injure or destroy if "after [the plaintiff] decided to switch its source of credit to another lender," the bank defendant, "upon learning of the switch, embarked upon a program to break the [plaintiff]").

The only other evidence relied upon by Cornice LLC are affidavits from Thomson and Gray that mostly recite information contained in the board meeting minutes. *See* Docs. 26-1, 26-2. Other information in the affidavits lack personal knowledge (as noted by Defendants). For example, Gray's affidavit notes that "First Bank refused to even consider allowing Itasca Financial to buy out the banks [sic] debt." Doc. 26-2. Gray does not explain the basis for this knowledge. Moreover, board meeting minutes reflect that First Bank did discuss selling the loan. *See* Doc. 1 at 44.

Plaintiff cannot prove that Defendants acted with the purpose to injure or destroy. Accordingly, Defendants are entitled to summary judgment on Plaintiff's claim for malicious interference with prospective business advantage.

7

### *III.* CONCLUSION

Defendants' motion for summary judgment (Doc. 20) is **granted**. Judgment should be entered in favor of Defendants.

**IT IS SO ORDRED** this 28th day of April, 2021.

Kelly K.E. Mahoney
Chief United States Magistrate Judge
Northern District of Iowa